UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARCIA ET AL, | : |
|     PLAINTIFFS, | : |
| | : CIVIL ACTION NO. 3:08cv1662(VLB) |
| | : |
|     v. | : FEBRUARY 6, 2012 |
| | : |
| SERPE ET AL, | : |
|     DEFENDANTS. | : |

<u>MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT [Dkt. ## 67 and 84].</u>

      Before the Court is a motion for summary judgment filed by the Defendants, Franstell & Co. LLC, Professional House & Office Cleaning, LLC, Franstel of CT, LLC, and The Great British Invention, LLC.  The Defendants also filed a supplemental motion for summary judgment identifying and correcting an error in connection with a factual assertion in their Local Rule 56(a)(1) statement and asserting further arguments with respect to the corrected factual assertion. The Plaintiffs are twelve former employees of Franstell & Co. LLC, Professional House & Office Cleaning, LLC and The Great British Invention, LLC and have brought this suit alleging violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 206 & 207 (a) (1) and the Connecticut Minimum Wage Act Conn. Gen. Stat. §§ 31-58 *et. seq.*  For the reasons stated hereafter, Defendants' motions for summary judgment are denied.

    <u>Facts</u>

      The following facts relevant to Defendants' motions for summary judgment are undisputed unless otherwise noted.   Franco Serpe is the owner and

managing member of Defendants Franstell & Co. LLC, Professional House & Office Cleaning, LLC, Franstel of CT, LLC, and The Great British Invention, LLC. [Dkt. #76, Local Rule 56(a)(1) statement at ¶ 1].

Defendant Franstell & Co. LLC (the "Landscaping LLC") was formed in 2004 and dissolved on February 24, 2010.  The primary business of the Landscaping LLC was exterior landscaping and snow and ice removal services for commercial business and residential customers in Fairfield County, Connecticut.  Plaintiffs Baryon Garcia, Danilo Audencio Grave, Danilo Flogar, Edy Hernandez, Ermelindo Farcia, Hugo Mentenegro, and Juan Ruiz were employees of the Landscaping LLC.  These Plaintiffs worked for the Landscaping LLC at various times during the period from 2005-2008.  [*Id.* at ¶¶15-16].

Defendant Professional House & Officer Cleaning, LLC (the "Cleaning LLC") was formed in 1999 and dissolved on March 3, 2010.   The primary business of the Cleaning LLC was an interior cleaning business for residential homes and commercial businesses in Fairfield County.  [*Id.* at ¶¶-16].  Plaintiffs Carmen Medina, Rosana Pelaez, Sandra Gabriel and Ivan Lainez were employees of the Cleaning LLC at various times during the period from 2005-2008.

Defendant The Great British Invention, LLC (the "Restaurant LLC") operated a restaurant in Norwalk, Connecticut.  [*Id.* at ¶ 70].  Prior to 2006, Streets of London Fish & Chips LLC operated the restaurant where Plaintiff Isreal Vasquez was an employee.  [*Id.* at ¶¶ 7-12].   On April 3, 2006, Streets of London Fish & Chips LLC was dissolved and The Great British Invention, LLC was formed

on February 6, 2006 and took over the ownership and operation of the restaurant in Norwalk where Mr. Vasquez worked on April 4, 2006.  The restaurant closed in May of 2008. [*Id.*].

Defendant Franstel of CT, LLC (the "New LLC") was formed on March 25, 2009.  [Dkt. #26, Local Rule 56(a)(1) statement at ¶ 1].  Defendants assert that New LLC has "developed business activities such as construction, remodeling, building renovations, painting services and building maintenance."  [*Id.* at ¶ 27].  Defendants further assert that the New LLC has completely different clients from the Landscaping LLC, engages in different business activities and that none of the Plaintiffs are or were employees of the New LLC.  [*Id.*].  Plaintiffs assert that New LLC's business is the continuation of both the Landscaping LLC and the Cleaning LLC businesses.   [Dkt. #90, Pl. Local Rule 56(a)(2), statement of disputed facts at ¶¶ 37-39].  Plaintiffs also assert that the New LLC's website advertises cleaning and landscaping services and represents that the New LLC is a partnership between the Cleaning LLC and the predecessor company of the Landscaping LLC.  [*Id.* at ¶ 39].

Franco Serpe has submitted an affidavit stating that Cleaning LLC did not have gross annual sales of $500,000 or more in 2005, 2006, 2007, 2008 or 2009.  [*Id.* at ¶3].  In their Local Rule 56 (a)(1) statement, Defendants do not rely on tax returns or other financial documentation to support this assertion.  Instead, Defendants solely rely on Mr. Serpe's affidavit.  Plaintiffs were provided with Cleaning LLC's tax returns for fiscal years 2005-2009 only after Defendants filed their motion for summary judgment.

Franco Serpe has submitted an affidavit stating that the Restaurant LLC did not have gross annual sales of $500,000 or more in 2005, 2006, 2007, or 2008. [*Id.* at ¶12]. In their Local Rule 56 (a)(1) statement, Defendants do not rely on tax returns or other financial documentation to support this assertion. Instead, Defendants solely rely on Mr. Serpe's affidavit. Plaintiffs were never provided with Cleaning LLC's tax returns or other financial documentation regarding its gross annual sales.

Franco Serpe has submitted an affidavit stating that the Landscaping LLC did not have gross annual sales of $500,000 or more in 2005, 2007, or 2008. [Dkt. #84, Def. Supplemental Motion for Summary Judgment at 2]. Defendants admit that Landscaping LLC had annual gross sales of $507,028 in 2006. [*Id.*]. In 2006, the only Plaintiff working for the Landscaping LLC was Edy Hernandez. In their Local Rule 56 (a)(1) statement, Defendants do not rely on tax returns or other financial documentation to support their assertion regarding Landscaping LLC's gross annual sales. Instead, Defendants solely rely on Mr. Serpe's affidavit. Plaintiffs were provided with the Landscaping LLC's tax returns for fiscal years 2005-2009 only after Defendants filed their motion for summary judgment.

Defendants assert that Edy Hernandez was a part-owner of the Landscaping LLC and not an employee on the basis of an operating agreement conveying Mr. Hernandez a 50% interest in the Landscaping LLC. [Dkt. #76, Local Rule 56(a)(1) statement at ¶ 20]. Plaintiffs assert that Mr. Hernandez was an employee and not a part owner on the basis of Serpe's IRS Form K-1 indicating that Mr. Serpe had a 90% interest and his wife Luz Serpe had a 10% interest in the

4

Landscaping LLC.  [Dkt. #90, Pl. Local Rule 56(a)(2), statement of disputed facts at ¶¶ 5-6].  Mr. Hernandez also asserts that he was treated like a regular employee and had no ability to exercise control over the operations of the business or participate in its profits.  [*Id.*].

Defendants assert that all Plaintiffs were appropriately paid time and a half for any overtime worked and were paid an appropriate hourly rate. [Dkt. #76, Local Rule 56(a)(1) statement at ¶¶ 31-33,37-40,43-45,52-54, 57-60,62-65, 67-70].  In their Local Rule 56 (a)(1) statement, Defendants do not rely on any financial records or other documentation to support their assertion that Plaintiffs were appropriately compensated.  Instead, Defendants solely rely on Mr. Serpe's affidavit.  Plaintiffs assert that they regularly worked more than 40 hours in a week but were not paid appropriate overtime.  Plaintiffs also assert that they did not receive all the wages they were owed and that Franco Serpe frequently paid Plaintiffs with checks that were returned for insufficient funds.   Certain Plaintiffs assert that Defendants did not pay them the appropriate minimum wage.  [Dkt. #90, Pl. Local Rule 56(a)(2), statement of disputed facts at ¶¶ 17-36].  Plaintiffs indicate that Defendants' records of the hours worked and wages paid to Plaintiffs were incomplete, incoherent at times, inconsistent and inaccurate.

Plaintiffs assert that in 2005 Serpe "joined his landscaping company with his house and office cleaning company." [Dkt. #90, Pl. Local Rule 56(a)(2), statement of disputed facts at ¶14].  Plaintiffs further assert that the Landscaping LLC and Cleaning LLC performed services for the same clients and that employees of the Landscaping and Cleaning LLCs would work at the same

locations at the same times.  [*Id.* at ¶12].  Plaintiffs also assert that the Landscaping LLC paid "expenses such as utilities, supplies and other such necessary expenses on behalf of" the Cleaning LLC.  [*Id.* at ¶15].  Defendants assert that all of the Defendant LLCs operated independently, were engaged in different types of businesses, and had different clients.  [Dkt. #76, Local Rule 56(a)(1) statement at ¶ 29].

Plaintiffs assert that the Defendant LLCs would receive thousands of dollars in cash from customers that was not reported as income.  [Dkt. #90, Pl. Local Rule 56(a)(2), statement of disputed facts at ¶15].  Plaintiffs assert that one project that was to generate more than $100,000 in cash for the Landscaping LLC was never reported.  [*Id.*].  Franco Serpe in his deposition also testified that in his business "there is some cash that certain customers pay that we use to pay subcontractors that want to be paid cash."  [Dkt. # 90, Ex. 8, Serpe Deposition at p. 68-69].

Plaintiffs also assert that the financial documents Defendants produced to Plaintiffs are inaccurate.  As noted above, Defendants do not rely on any financial documents in their Local Rule 56(a)(1) statement but rather rely on the conclusory statements made by Franco Serpe in his affidavit.   Plaintiffs point out that while Serpe maintained fourteen pages of employee time records for the Landscaping LLC in 2007 and twenty-pages of employee time records for the Cleaning LLC in 2007, these companies "reported to the Internal Revenue Service that they paid no money as salaries and wages in that year."  [Dkt. #90, Pl. Local Rule 56(a)(2), statement of disputed facts at ¶46].

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).  At the summary judgment stage of the proceeding, plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch-Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted).

## Analysis

"In order to make a *prima facie* showing of a violation under the minimum wage and overtime provisions of the FLSA, Plaintiffs must adequately allege that they were covered employees under the FLSA.  The FLSA minimum-wage and

overtime provisions apply only to employees who are '(1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'individual coverage'), or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'enterprise coverage').'" *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 121 (E.D.N.Y. 2011) (quoting *Shim v. Millennium Group*, No.08-cv-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009)); see also 29 U.S.C. § 206(a), 207(a).  Here individual coverage does not apply since Plaintiffs have not asserted that they were preforming work involving or related to the movement of persons or things between states.

Plaintiffs argue that they were covered employees because they were employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce.  An entity is an "enterprise" for purposes of FLSA liability when "the related activities performed by any person or persons are for a common business purpose."  29 U.S.C. §203 (r).   "An enterprise is 'engaged in commerce' where its employees engage in commerce or handle, sell, or otherwise work on goods and materials that have been moved in commerce, and where the enterprise has at least $500,000 in annual gross volume of sales made or business done." *Solis v. Cindy's Total Care, Inc.*, No.10Civ.7242(PAE), 2012 WL 28141, at *15 (S.D.N.Y. Jan. 5, 2012) (citing 29 U.S.C. §203 (s)).  Courts in the Second Circuit have reduced the definition of "enterprise" to a three-part test: "(1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose."

*Bowrin v. Catholic Guardian Soc'y*, 417 F.Supp.2d 449, 458 (S.D.N.Y. 2006). "Enterprise coverage has been interpreted broadly" by courts.   *Boekemeier v. Fourth Universalist Society in City of New York*, 86 F.Supp.2d 280, 285 (S.D.N.Y. 2000).

"Activities of more than one entity are related where the entities provide mutually supportive services to the substantial advantage of each entity." *Locke v. St. Augustine's Episcopal Church*, 690 F.Supp.2d 77, 85 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).  "Activities are considered related when they are auxiliary or service activities such as central office and warehousing activities, or bookkeeping, auditing, purchasing, advertising, and other services." *Boekemeier*, 86 F.Supp.2d at 286 .  "Entities constitute a unified operation by performing activities as a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." *Locke v*, 690 F.Supp.2d 77 at 86 (internal quotation marks and citation omitted).  Common control exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together."  29 C.F.R. § 779.221. However, "[c]ommon ownership standing alone does not bring unrelated activities within the scope of the same enterprise … However, if it appears that there is a reasonable relationship of all the activities to a single business purpose a different conclusion might be warranted."  29 C.F.R. § 779.211.

"In circumstances where different entities are involved, the critical inquiry is operational interdependence in fact.  The provision of mutually supportive

services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act." *Bowrin*, 417 F.Supp.2d at 458.

Here, it is undisputed that there was common control by Franco Serpe of the Landscaping LLC, the Cleaning LLC and the Restaurant LLC.  It is also undisputed that the Landscaping LLC, the Cleaning LLC and the Restaurant LLC engaged in interstate commerce for purposes of enterprise coverage as "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."  *Rodriguez*, 784 F. Supp. 2d at 121 (internal quotation marks and citation omitted).  Consequently, the Plaintiffs' handling of supplies or equipment that originated out-of-state is sufficient to invoke enterprise coverage. *See e.g., Locke*, 690 F.Supp. 2d at 88 ("Cleaning products purchased locally have been moved in or produced for commerce, and custodians are employees who handle these products."); *Boekemeier*, 86 F.Supp.2d at 285 ("Plaintiff's handling of janitorial goods that have moved in commerce is more ... [is] more than sufficient to invoke enterprise coverage."); *Archie v. Gran Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) (concluding that bags, brooms, shovels, and pails used by sanitation workers "undoubtedly moved in interstate commerce to New York City."); *Rodriguez*, 784 F.Supp. 2d at 121 ("The Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York.").

However, as will be discussed below there are genuine disputes of material fact that preclude a grant of summary judgment as to (i) whether the Defendants LLCs should constitute a single enterprise under the FLSA; (ii) whether the Defendants LLC met the FLSA threshold of $500,000 in gross annual sales; (iii) whether the Plaintiffs were appropriately compensated under the FLSA; (iv) whether Plaintiff Edy Hernandez was an employee subject to the FLSA; and (v) whether New LLC is a successor company to the other Defendant LLCs.

i. *There is a material fact in dispute as to whether the Landscaping LLC and the Cleaning LLC should be treated as a single enterprise*

Plaintiffs argue that the Landscaping LLC, the Cleaning LLC and the Restaurant LLC should be treated as a single enterprise under the FLSA. However, Defendants argue that these three LLCs operated independently, not for a common business purpose and therefore cannot be treated as a single enterprise.

Although, Plaintiffs assert that the landscapers and the cleaners would provide cleaning and landscaping services to the restaurant, the Plaintiffs have put forth no evidence which suggests that the restaurant was operationally interdependent with the landscaping or cleaning businesses.   Plaintiffs have not asserted that there was any overlap of employees between the restaurant and the cleaning or landscaping businesses or that the landscaping or cleaning businesses paid for the restaurant's expenses.  Plaintiffs have not indicated that the restaurant provided any services to the landscaping or cleaning businesses such that "there was the provision of mutually supportive services to the

substantial advantage of each entity." *Bowrin*, 416 F.Supp.2d at 458.  Further,
there is no evidence that Franco Serpe promoted or advertised his restaurant in
conjunction with his landscaping and cleaning businesses.   Accordingly, the
Court finds there is no basis for a reasonable juror to conclude that the
Restaurant LLC should be treated as a single enterprise with the Landscaping
and Cleaning LLCs.  A reasonable juror could not conclude based on the
evidence in the record that the Restaurant LLC was a single enterprise with the
Landscaping and Cleaning LLCs.

However, Plaintiffs have put forth sufficient evidence from which a
reasonable juror could find that the Landscaping and Cleaning LLCs were
operationally interdependent and should be considered a single enterprise under
the FLSA.   As Defendants point out, "[c]ommon ownership standing alone does
not bring unrelated activities within the scope of the same enterprise." 29 C.F.R. §
779.211.  Contrary to Defendants' contention, Plaintiffs have presented evidence
beyond common ownership when viewed in the light most favorable to them
suggests there was operational interdependence in fact between the Landscaping
and Cleaning LLCs.  Plaintiffs have asserted that since 2005 Serpe had joined his
Landscaping business to his Cleaning business.  Plaintiffs have also indicated
that Serpe has promoted and advertised his landscaping and cleaning
businesses together and that his landscaping and cleaning employees were often
deployed to the same worksites at the same times.  Plaintiffs have further
asserted that the Landscaping LLC would pay expenses on behalf of the Cleaning
LLC.  When viewing these facts in the light most favorable to the Plaintiffs, a

reasonable juror could conclude that the Landscaping and Cleaning LLCs were providing mutually supportive services to the substantial advantage of each other.  These facts could therefore support a reasonable fact finder's conclusion that there was a reasonable relationship between the Cleaning and Landscaping LLCs activities to a single business purpose.

Contrary to Defendants' argument, Serpe's conclusory assertion in his affidavit that these businesses were operated separately and not for a common business purpose is not a sufficient ground for the Court to find that no factual issues exist.  When viewing the facts in the light most favorable to the non-moving party, there are genuine issues of material fact in dispute regarding whether the Cleaning and Landscaping LLC should be considered one enterprise under the FLSA.   A reasonable jury could easily find that Serpe's conclusory assertions in his affidavit did not outweigh the other evidence Plaintiffs have presented regarding the operational interdependency of the Cleaning and Landscaping LLCs' operations.   See *Gonzalez v. El Acajutla Restaurant, Inc.*, No.CV04-1513(JO), 2007 WL 869583, at *7 (E.D.N.Y. March 20, 2007) (finding that the owner's conclusory assertion that his restaurant, deli and laundromat operated separately and therefore should not be treated as a single enterprise for purposes of the FLSA was "not sufficient to overcome" Plaintiffs' allegations that the owner comingled funds between businesses and treated plaintiffs "in a fungible and interchangeable manner").  Consequently, there is a material fact in dispute as to whether the Landscaping LLC and the Cleaning LLC were

operationally interdependent and should be treated as a single enterprise under the FLSA.

>    ii.  *There is a material fact in dispute as to whether the Defendant LLCs had gross annual sales of $500,000 or more in the relevant periods*
>    Defendants argue that enterprise coverage should not apply as the

Landscaping LLC, the Cleaning LLC and the Restaurant LLC did not have annual gross sales of $500,000 or more during the relevant periods except for the Landscaping LLC in 2006.

As noted above, the Defendants solely rely on Serpe's affidavit stating that none of the Defendant LLCs had annual gross sales of $500,000 or more during the relevant periods except for the Landscaping LLC in 2006.   The Court is not persuaded that Mr. Serpe's self-serving and conclusory affidavit is sufficient evidence to warrant granting summary judgment on the basis that the Defendant LLCs did not meet the $500,000 threshold under the FLSA.  *See Gonzalez*, 2007 WL 869583, at *7 (disregarding owner's "self-serving and conclusory" statement that "I have never grossed $500,000 per year" as a basis for granting summary judgment "particularly in light of the defendants' selective reliance on tax returns").

As noted above, Defendants only produced tax returns for the Landscaping and Cleaning LLCs to Plaintiffs after filing their summary judgment motion. Defendants did not provide any tax returns or other financial documentation for the Restaurant LLC to Plaintiffs.   Although Defendants have not relied on any underlying financial documentation in support of their motion for summary

judgment on this point, Plaintiffs have submitted evidence demonstrating that the Defendant LLCs significantly understated their income on their tax returns. Plaintiffs have asserted that the Defendant LLCs would routinely receive large amounts of cash up to $100,000 from its customers that would not be reported and that the Defendant LLCs did not report the true amount of wages worked by the Plaintiffs on their tax forms.  In addition, Mr. Serpe admitted in his deposition that he would often receive cash from some of his customers.  When viewing these facts in the light most favorable to the Plaintiffs, a reasonable jury could conclude that any of the Defendant LLCs had gross annual sales of $500,000 or more in any given year during the relevant periods even in light of Mr. Serpe's affidavit to the contrary.  *See Francios v. Friend Green Tomatoes, Inc.*, 306 Fed. Appx. 443, 445 (11th Cir. 2008) (finding that the question of whether employer had gross annual revenues of 500,000 or more was for the jury where the employer conceded that some sales were unreported and the actual amount of those undisclosed sales was uncertain.  "The jury thus had to determine whether there was enough evidence to show that the restaurant's cumulative unreported sales would cover the difference between the reported gross revenues and the $500,000 FLSA threshold.").

A reasonable juror would likely not conclude that Mr. Serpe's conclusory and self-serving statements in his affidavit as to the gross annual sales of the Defendant LLCs absent any underlying financial documentation was sufficient to overcome Plaintiffs' assertion that the Defendant LLCs underreported their income and did in fact have gross annual sales of $500,000 or more in any given

year during the relevant periods.  Consequently, there is a genuine dispute as to the material fact of whether any of the Defendant LLCs had annual gross sales of $500,000 or more in any given year during the relevant periods.

The Court notes that at trial if the jury concludes that the Cleaning and Landscaping LLCs constitute a single enterprise then the jury must determine whether the annual gross sales of both LLCs together meet the $500,000 FLSA threshold in any given year during the relevant periods.  However, if the jury finds that the Cleaning and Landscaping LLCs do not constitute a single enterprise then the jury must determine whether the Cleaning LLC on its own had gross annual sales of $500,000 or more in any given year during the relevant periods and separately whether the Landscaping LLC on its own had gross annual sales of $500,000 or more in any given year during the relevant periods.  Since the Court has found that the Restaurant LLC was not operating as a single enterprise with the Landscaping and Cleaning businesses, the jury must determine whether the Restaurant LLC alone had gross annual sales over the $500,000 threshold in any given year during the relevant periods.

### iii. There are material facts in dispute as to whether the Plaintiffs were appropriately paid overtime and the minimum wage

As noted above, Defendants primarily rely on Mr. Serpe's conclusory and self-serving affidavit for evidence that he appropriately compensated Plaintiffs and did not violate the FLSA's overtime and minimum wage provisions.  In response, Plaintiffs have indicated that the Defendant LLCs' records of the hours worked and wages paid to Plaintiffs were incomplete, incoherent at times,

inconsistent and inaccurate.   Plaintiffs have attested to the fact that they routinely worked overtime and were not appropriately compensated and that some of the Plaintiffs were not paid the required minimum wage.

Under the FLSA, "employers are required to maintain accurate records establishing the hours worked by their employees." *Angel v. Queens Blvd. Car Wash*, No.06-CV-6667(CBA), 2008 WL 111159, at *8 (E.D.N.Y. Jan. 8, 2008) (citing 29 U.S.C. § 211(c)).   When an employer fails to maintain such records, courts have held that the "employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."   *Id.* (internal quotation marks and citations omitted).   In addition, "where the employer has defaulted, the courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" *Id.* (citing *Zeng Liu v. Jen Chu Fashion Corp.*, No.ooCV4221, 2004 WL 33412, at *8 (S.D.N.Y. Jan. 7, 2004)). Where a plaintiff carries his burden by proving that he has performed work for which he was improperly compensated, the burden then shifts back to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

The Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) concluded a court may "award damages to the employee, even though the result be only approximate…[because] [t]he employer cannot be heard to

complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [record keeping laws]." 328 U.S. at 687.  The Supreme Court also made clear that to penalize an employee by "denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," would "place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Id.*

Here, Plaintiffs dispute the accuracy and completeness of the Defendants' records of the hours and wages worked.  In light of the Supreme Court's mandate that an employee not be penalized by his inability to prove the precise extent of uncompensated work and that an employer should not be rewarded for failure to keep accurate records, the Court finds that there is a genuine dispute as to the material fact of whether the Plaintiffs were appropriately compensated under the FLSA.  When viewing the facts in the light most favorable to the Plaintiffs, the Court must credit the Plaintiffs' account that Defendants' proffered evidence of the hours worked and wages paid is inaccurate and incomplete.  See *Angel*, 2008 WL 111159 at *9 (finding where the parties "dispute the accuracy of the defendants' proffered proof of plaintiff's hours and wages" there "is a legitimate factual dispute as to the authenticity of the [proffered] timecards that would be better decided by a finder of fact").  Accordingly, the Court finds that there are a material factual disputes as to the validity of Defendant's records and whether the Plaintiffs were appropriately compensated under the FLSA.

18

The "FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)). "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Plaintiffs contend that the Defendants' violation of the FLSA was willful and therefore they should be entitled to damages going back to 2005. Defendants contend that Plaintiffs have not cited any evidence that the alleged violations were willful. However, Plaintiffs have asserted that the Defendant LLCs on occasion never compensated Plaintiffs for any of the hours worked. When viewing these facts in the light most favorable to the Plaintiffs, a reasonable juror could conclude that the alleged violations were willful. Therefore there are genuine issues of material fact in dispute regarding whether Defendants violated the FLSA willfully. Accordingly, if a jury concludes that the Defendants willfully violated the FLSA, Plaintiffs would be entitled to damages going back to 2005.

### iv. There is a material fact in dispute as to whether Plaintiff Edy Hernandez is an employee under the FLSA

Defendants contend that Plaintiff Edy Hernandez was not an employee but a part-owner of the Landscaping LLC and therefore is not subject to the FLSA.

Defendants point to an operating agreement conveying Mr. Hernandez a 50% interest in the Landscaping LLC as evidence that he was not employee.  However, Plaintiffs contend that Mr. Hernandez was an employee and had no ability to exercise control over the operations of the business or participate in its profits. Plaintiffs also point to Mr. Serpe's IRS Form K-1 indicating that Mr. Serpe had a 90% interest and his wife Luz Serpe had a 10% interest in the Landscaping LLC as evidence that Mr. Hernandez was never a part owner.

The FLSA defines "employee" as "any individual employed by an employer."  29 U.S.C. §203(e)(1).   An entity "employs" an individual it if "suffer[s] or permit[s]" that individual to work.  29 U.S.C. § 203(g).  Courts have found that "[t]his definition is necessarily a board one, in accordance with the remedial purpose of the FLSA."  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 & n.3 (1945); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988)).  "An entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer."  *Id.*  The Supreme Court has explained that "economic reality" rather than "technical concepts" is the test of employment under the FLSA.  *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

Defendants suggest that Mr. Hernandez as a result of his 50% interest was therefore an employer and not an employee. When determining whether a given person is an "employer" for purposes of FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in

20

question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (quoting *Goldberg*, 366 U.S. at 33).  Under the "economic reality" test, courts consider factors including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carte v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citations omitted).  "No one factor is dispositive.  Instead, the economic reality test encompasses the totality of circumstances, no one of which is exclusive." *Chan v. Sung Yue Tung Corp.*, No.03Civ.6048, 2007 WL 313483, at *12 (S.D.N.Y. Feb. 1, 2007) (internal quotation marks and citations omitted).

Here Mr. Hernandez has testified that he had no actual control over the Landscaping LLC despite his purported 50% interest.  Viewing these facts in the light most favorable to the Plaintiffs, a reasonable juror could conclude that Mr. Hernandez  did not have the power to hire and fire employees, did not determine the rate and method of payment, and did not maintain employment records.  A reasonable juror could therefore conclude based on the evidence in the record that the economic reality was that Mr. Hernandez was an employee that Serpe permitted to work for the Landscaping LLC and not an employer or part-owner with Serpe.  *See Chan*, 2007 WL313483 at *13 (finding that defendant was not an employer "because the evidence did not establish that he had operational control.  The [defendant] was a minority shareholder in the restaurant…but the totality of the circumstances suggest that his investment did not carry with it

21

managerial responsibility.  His primary responsibility at the restaurant involve[d] working at a cart where he tends and prepares shrimp.").  Since Plaintiffs have put forth evidence that Mr. Hernandez did not have operational control or managerial responsibility, a reasonable juror could conclude that Mr. Hernandez was not an employer but really an employee.  Accordingly, there is a genuine issues of material fact in dispute regarding whether Mr. Hernandez was an employee or employer of the Landscaping LLC.

### v. There are material facts in dispute as to whether New LLC is a successor to the Cleaning and Landscaping LLCs

Plaintiffs argue that New LLC is a successor corporation to the other Defendant LLCs and therefore is liable for the alleged FLSA violations of the other Defendant LLCs.  Defendants argue that the New LLC is not a successor corporation because the nature of its business activities is completely different from the other Defendant LLCs businesses and it is therefore a totally new and independent business.

In the Second Circuit, the test for successor liability under the FLSA is unresolved.  The question of what test should apply under the FLSA was the subject of a recent and well-reasoned District of Connecticut decision.  *See Medina v. Unlimited Systems, LLC*, 760 F.Supp.2d 263 (D. Conn. 2010).  The *Medina* court outlined that there are three options that could apply: "the traditional common law successor liability rule and exceptions; the broader 'substantial continuity' standard that the Supreme Court has endorsed in some

federal labor law cases; and the Connecticut state common law standard."

*Medina*, 760 F.Supp.2d at 266.

### 1. *Traditional common law successor rule and exceptions*

Under traditional common law rules, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."  *Id.* (citing *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006)).  There are four exceptions to this general rule:

> (1) the purchaser expressly or impliedly assumed the seller's tort liability; (2) there was a consolidation or merger of the seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction was entered into fraudulently to escape obligations related to the seller's liabilities.

*Id.*

A corporation may be deemed a mere continuation "when only one corporation exists following the transfer of assets from the selling corporation to the purchasing corporation, and there is 'identity of stock, stockholders, and directors between the successor and predecessor corporations.'".  *Id.* (quoting *New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682 (2d Cir. 2003)).  The *Medina* court outlined that a *de facto* merger could be found where there is "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the [seller] as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the [business's] uninterrupted continuation ...; and (4) continuity of management, personnel, physical location, assets, and general business operation."  *Id.* (internal quotation marks and citation omitted).  The *Medina* court observed that the "mere continuation and de facto merger theories are

substantially similar and are often treated as a single exception" and that "[f]or both, continuity of ownership is the key factor."  *Id.*

### 2.  Substantial continuity standard

"In the federal labor law context, the Supreme Court has held that a purchasing corporation sometimes may qualify as a successor in interest even when the purchaser would not constitute a mere continuation of the selling corporation under the traditional common law standard."  *Medina*, 760 F.Supp.2d at 267 (citing *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 519 (2d Cir. 1996)).  The Supreme Court has found that a purchasing corporation may be liable for violations of the National Labor Relations Act ("NLRA") or the Labor Management Relations Act ("LMRA"), "when there is simply 'substantial continuity' between the selling and purchasing business enterprises."  *Id.* (citing *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43-45 (1987); *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 263-4 (1974)).   The *Medina* court explained that "[i]n contrast to the traditional common law mere continuation exception, continuity of ownership is not crucial for a finding of 'substantial continuity.'… No one factor is determinative, and substantial continuity is determined by a 'totality of the circumstances.'"  *Id.* (internal citations omitted).

The *Medina* court posited that the substantial continuity test in the NLRA context reflected the "Supreme Court's recognition that allowing a successor business to avoid liability for violations of its predecessor could defeat 'the employees' legitimate expectation ... that the unfair labor practices [would] be remedied.'"  *Id.* (quoting *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 184

(1973)).  In addition, the *Medina* court noted that the Supreme Court's refusal to adopt an analysis which distinguished between mergers, consolidations, or purchases of assets reflected the Supreme Court's concern that "so long as there is continuity in the employing industry, the public policies underlying the doctrine will be served by its broad application." *Id.* (internal quotation marks and citation omitted).

As the *Medina* court noted, the Second Circuit held that the substantial continuity test applied in the NLRA context also applied to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") reasoning that the substantial continuity test was "more consistent with [CERCLA's] goals … [than] the older and more inflexible 'identity' rule." *B.F. Goodrich v. Betkoski*, 99 F.3d at 519.  However the Supreme Court has since held that CERCLA has not "displaced or fundamentally altered common law standards of limited liability." *United States v. Bestfoods*, 524 U.S. 51, 70 (1998).  Following the Supreme Court's decision in *Bestfoods*, the Second Circuit concluded that it had incorrectly adopted a special successor liability rule for use in CERCLA cases.  *See New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d at 685-86.

The Supreme Court in *Bestfoods* expressly declined to consider whether state or federal common law under CERCLA should apply and the Second Circuit "was able to avoid deciding whether state or federal common law applied because it found that New York's successor liability rule was virtually identical to the traditional common law rule." *Medina*, 760 F. Supp.2d at 268 (citing *New York v. Nat'l Servs. Indus.*, 460 F.3d at 203).

The *Medina* court observed that the "Second Circuit has not decided whether the substantial continuity standard used in the NLRA context also applies in the FLSA context" and that the "FLSA itself does not address the issue of liability for successor employers." *Id.* In addition, the Second Circuit has noted that "Congress intended [the FLSA] to have the widest possible impact in the national economy." *Barfield v. N.Y.City Health & Hosp. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008). The *Medina* court also observed that outside of the Second Circuit, several courts have "applied [in the FLSA and other employee-protection statutes] versions of the substantial continuity test for successor liability endorsed by the Supreme Court in the NLRA context." *Medina*, 760 F. Supp.2d at 268 (collecting cases). The *Medina* court also noted that courts in the Eastern District of New York have applied New York's common law successor liability test in the FLSA context "as implemented by the Second Circuit in the CERCLA context post *Bestfoods*." *Id.* at 269 (collecting cases). The *Medina* court also observed that some courts in the Southern District of New York, Western District of New York, and the District of Connecticut have applied a version of the Supreme Court's substantial continuity test to evaluate successor liability for Title VII violations. *Id.* (collecting cases). The *Medina* court explained that "[t]he substantial continuity test that those district courts have applied in the Title VII context examines not only whether there has been substantial continuity in operations, but also whether the purchasing corporation had notice of the charges against the selling corporation, and whether the predecessor corporation has the ability to provide relief." *Id.*

### 3.  *Connecticut state common law standard*

The Connecticut Supreme Court has not addressed the requirements for successor liability.  However, as the *Medina* court observed, the "Connecticut Appellate Court has quoted treatises and Second Circuit cases to articulate Connecticut's successor liability standard." *Id.* (citing *Chamlink Corp. v. Merrit Extruder Corp.*, 96 Conn.App. 183, 187 (2006)).

"In Connecticut, the general rule is the same as the traditional common law rule: 'The mere transfer of the assets of one corporation to another corporation or individual generally does not make the latter liable for the debts or liabilities of the first corporation.'" *Id.* at 269-270 (quoting *Chamlink*, 96 Conn.App. at 187). The four exceptions to this general rule under Connecticut common law also tract the four exceptions under the traditional common law rule: "(1) a purchaser expressly or impliedly agrees to assume the liabilities of the seller; (2) the purchaser is a mere continuation of the seller; (3) the companies merge; or (4) the transaction is entered into fraudulently to escape liability." *Id.* at 270.

"However, under Connecticut common law, the 'mere continuation' exception is broader and more flexible than the traditional common law 'mere continuation' exception.  Specifically, Connecticut courts recognize the 'substantial continuity' or 'continuity of enterprise' theory that the Second Circuit articulated in *Betkoski*." *Id.* (citing *Kendall v. Amster*, 108 Conn.App. 319, 332 (2008); *Chamlink*, 96 Conn.App. at 187-88).  The *Medina* court explained that "[w]hile the Second Circuit acknowledges that the [continuity of enterprise] rule

27

is generally presented as a variant of the mere continuation exception, it has construed mere continuation and continuity of enterprise as separate theories… By contrast, Connecticut courts treat continuity of enterprise as their preferred version of the mere continuation exception, essentially defining mere continuation as continuity of enterprise." *Id.* (internal quotation marks and citations omitted).

The *Medina* court outlined the factors that "Connecticut courts typically consider to determine whether a business is a 'mere continuation' [to] include: continuity of management, personnel, physical location and general business operations; continuity of shareholders; cessation of the predecessor business shortly after the successor entity is formed; and whether the purchaser business holds itself out as the effective continuation of the seller." *Id.* (citations omitted). For successor liability to be found, not all of the above factors have to be established. *Id.* citing (*S. Conn. Gas Co. v. Waterview of Bridgeport Ass'n, Inc.*, No.CV054005335, 2005 WL 1681005, at *2-3 (Conn. Super Ct. June 1, 2006)). Under Connecticut law, "continuity of ownership is not an essential requirement for a business to be deemed a mere continuation." *Id.* at 271 (citations omitted).

As the *Medina* court concluded, "it is not entirely clear which standard this Court should apply to determine successor liability under the FLSA." *Id.* However, the Court need decide which standard should apply under the FLSA because there are genuine issues of material facts in dispute which would be dispositive to the issue of successor liability under any of the three standards.

First it appears that Franco Serpe is the owner and manager of the New LLC and so there is continuity of ownership between his predecessor companies and the purported successor company.   Defendants argue that since New LLC is solely owned and managed by Franco Serpe and that the Landscaping LLC was owned by Franco Serpe, his wife Luz and Edy Hernandez there cannot be continuity of ownership.   However, the Court does not find Defendants' argument persuasive.  As discussed above, there is material fact in dispute as to whether Edy Hernandez was an employee or part-owner of the Landscaping LLC. Moreover, a reasonable juror could conclude that based on the evidence in the record that Franco Serpe was the real person in charge and in control of all the Defendant LLCs such that there was continuity of ownership.

One of the major differences between the "substantial continuity standard" and the traditional common law rule is that under the "substantial continuity standard" there need not be continuity of ownership to support the application of successor liability.  Likewise, one of the major differences under the Connecticut state common law standard and the traditional common law rule is that under Connecticut's approach continuity of ownership is also not a requirement for successor liability.  In the present case, since there is arguably continuity of ownership, successor liability can be equally established under all three standards.

Although the traditional common law rule is arguably stricter than both the Connecticut common law standard and the "substantial continuity standard" which is more a fluid standard focused on the totality of the circumstances, in the

29

Case 3:08-cv-01662-VLB   Document 113   Filed 02/06/12   Page 30 of 32

present case the decisive inquiry under all three approaches is identical.  Since continuity of ownership is present as well as continuity of management, the dispositive analysis under all three standards is whether there is continuity of general business operations between New LLC and the Landscaping, and Cleaning LLCs.  Therefore if New LLC's general business operations are substantially similar to the business operations of these predecessor companies, then New LLC will be considered the successor in interest under all three standards.   In other words, the dispositive inquiry is whether New LLC is the effective continuation of the Mr. Serpe's prior landscaping and cleaning businesses.

Here, Defendants, relying on Mr. Serpe's affidavit, assert that New LLC is really a construction business and not a landscaping or cleaning business. Defendants further assert that New LLC has completely different clients and engages in totally different business activities.  However, Plaintiffs have asserted that New LLC is really just the continuation of the prior landscaping and cleaning business.  Plaintiffs submit that New LLC's website advertises cleaning and landscaping services and represents that it is a partnership between the former cleaning and landscaping businesses.  When viewing these facts in the light most favorable to the non-moving party, a reasonable juror could conclude that New LLC is the effective continuation of the Landscaping and Cleaning LLCs businesses.   Accordingly, the Court finds that there is a genuine issue of material fact in dispute regarding the nature of New LLC's general business operations.  If New LLC does provide landscaping and cleaning services as

Plaintiffs contend, then under all three successor liability standards New LLC would be the successor in interest to the Landscaping and Cleaning LLCs.

Although Plaintiffs vaguely suggest that New LLC is a successor to all three predecessor LLCs, the entire substance of Plaintiffs' argument is focused on how New LLC is a successor to the Landscaping and Cleaning LLCs. Plaintiffs put forth no facts or arguments regarding how New LLC is a successor to the Restaurant LLC beyond continuity of ownership.  Since there are no facts which suggest that New LLC also operates a restaurant, a reasonable juror could not conclude that New LLC was the effective continuation of Mr. Serpe's former restaurant business.   Consequently, the Court finds that New LLC is not a successor in interest to the Restaurant LLC.

In sum, summary judgment is inappropriate since there are genuine disputes as to the material facts of (i) whether the Cleaning and Landscaping LLCs were operationally interdependent and therefore constituted a single enterprise under the FLSA, (ii) whether the Restaurant LLC, Cleaning LLC and Landscaping LLC alone or together had annual gross sale of $500,000 or more in any given year during the relevant periods, (iii) whether the Plaintiffs were not paid overtime or the minimum wage as required under the FLSA; (iv) whether Plaintiff Edy Hernandez was an employee under the FLSA; and (v) whether New LLC's business operation is just a continuation of the Cleaning and Landscaping LLCs' businesses.

<u>Conclusion</u>

**Based upon the above reasoning, the Defendants' [Dkt. ## 67 and 84] motions for summary judgment are DENIED.**

**IT IS SO ORDERED.**

**_____/s/_____**

**Hon. Vanessa L. Bryant**

**United States District Judge**

**Dated at Hartford, Connecticut: February 6, 2012**